IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NO. 1:20-CV-338-GCM-DCK

| | |
|---|---|
| CHRISTINE PATRICIA LUCAS, ) </br> ) </br> Plaintiff, ) </br> ) </br> v. ) </br> ) </br> COMMISSIONER OF SOCIAL SECURITY, ) </br> ) </br> Defendant. ) </br> ) | **MEMORANDUM AND** </br> **RECOMMENDATION** |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion for Summary Judgment" (Document No. 16) and "Defendant's Motion For Summary Judgment" (Document No. 18). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b). After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion for Summary Judgment" be denied; that "Defendant's Motion For Summary Judgment" be granted; and that the Commissioner's decision be affirmed.

## BACKGROUND

Plaintiff Christine Patricia Lucas ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on applications for disability benefits. (Document No. 1). Plaintiff filed applications for a period of disability and disability insurance benefits ("DIB") on or about August 15, 2014, under Title II of the Social Security Act, 42 U.S.C. § 405, and under Title XVI of the Social Security Act, 42 U.S.C. § 1383, both alleging an inability to work due to a disabling condition beginning April 25, 2014. (Transcript of the Record of Proceedings ("Tr.") 224, 601, 466, 475).

The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's applications initially on or about October 31, 2014, and again after reconsideration on or about December 30, 2014. (Tr. 224, 255, 259, 265, 271 ). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> We have determined that your condition is not severe enough to be considered disabling. In deciding this, we considered the medical records, your statements, and how your condition affects your ability to work.
>
> You said you are unable to work because of bipolar disorder, anxiety, degenerative disc disease, back problem, neck injury, carpal tunnel syndrome, and attention deficit hyperactivity disorder. We have reviewed the above medical record carefully, and we realize that you are concerned about your health. We also realize that you may not feel that you are capable of working. However, our review of your medical records reveals no severe limitations resulting from your condition that would limit your ability to work. Therefore, your claim for disability is denied.

(Tr. 270).

Plaintiff filed a timely written request for a hearing on or about January 6, 2015. (Tr. 224, 276). On December 12, 2016, Plaintiff appeared and testified at a hearing before Administrative Law Judge Sarah Cyrus ("Judge Cyrus"). (Tr. 127-178, 224). In addition, David L. Crystal, a vocational expert, and Matt Rollins, Plaintiff's then-attorney, appeared at the hearing. Id.

On March 24, 2017, Judge Cyrus denied Plaintiff's claim(s) for disability. (Tr. 224-242). Judge Cyrus held that Plaintiff was not disabled between April 25, 2014, and March 24, 2017. Id. Plaintiff requested review of Judge Cyrus' decision, and on or about January 8, 2018, the Appeals Council granted the request and remanded Plaintiff's case for further consideration of Plaintiff's ability to perform any past relevant work. (Tr. 249-250, 320-322, 330, 345). Specifically, the Appeals Council noted it was unclear whether Plaintiff had "performed the job of substance abuse counselor for the required more than four years." (Tr. 250).

Following remand, Plaintiff appeared and testified at a hearing before Administrative Law Judge James Andres ("Judge Andres") on October 3, 2018. (Tr. 105-125). In addition, vocational expert Michael Frain, and a medical expert, Dr. Ostrow, appeared at this second hearing. (Tr. 105, 107). Plaintiff was unrepresented at the second hearing. (Tr. 107). It was noted during the second hearing that records were missing. (Tr. 105-125). At some point after the second hearing, Plaintiff's case was transferred "from Florida to Kingsport." (Tr. 601).

On February 11, 2020, Plaintiff appeared for a third hearing and testified before Administrative Law Judge Benjamin Burton (the "ALJ"). (Tr. 15, 40-103). In addition, vocational expert Janette Clifford (the "VE"), and Leah Broker, Plaintiff's attorney, appeared at the third hearing. Id. After the hearing, Plaintiff amended her alleged disability onset date to August 1, 2018. (Tr. 15, 601-603).

The ALJ issued an unfavorable decision on April 8, 2020, concluding that Plaintiff "was not under a disability between August 1, 2018, and the date of his decision." (Tr. 16, 28). The ALJ also noted that Plaintiff had "sufficient quarters of coverage to remain insured through September 30, 2019," and "[t]hus the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits." (Tr. 16).

On or about June 5, 2020, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on September 29, 2020. (Tr. 1, 462-465). The ALJ decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on November 24, 2020. (Document No. 1). On December 7, 2020, the undersigned was assigned to this case as the referral Magistrate Judge.

Plaintiff's "Motion for Summary Judgment" (Document No. 16) and "Plaintiff's Memorandum in Support of Motion for Summary Judgment" (Document No. 17) were filed July 26, 2021; and "Defendant's Motion For Summary Judgment" (Document No. 18) and "Memorandum Of Law In Support Of Defendant's Motion For Summary Judgment" (Document No. 19) were filed September 22, 2021. A "Brief of Plaintiff in Reply to the Commissioner's Memorandum" (Document No. 20) was filed on October 6, 2021. [1]

The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Graham C. Mullen is now appropriate.

## STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as

---

[1] The undersigned further notes that Plaintiff's briefs suggest they were prepared by Laura Beth Waller. See (Document No. 17, p. 28; Document No. 20, p. 6). The docket does not indicate that Laura Beth Waller has filed a Notice Of Appearance, or sought to be admitted *pro hac vice*.

a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). "[A] reviewing court must uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Peace v. Berryhill, 2019 WL 2406626, at *1 (4th Cir. June 7, 2019) (quoting Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017)). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## DISCUSSION

The question considered by the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, between August 1, 2018, and the date of the decision.[2] (Tr. 15-16, 28). To establish entitlement to benefits, Plaintiff has the burden of proving disability within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).

---

[2] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fourth and fifth steps that Plaintiff was not disabled. (Tr. 26-27).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since August 1, 2018, the amended alleged disability onset date. (Tr. 18). At the second step, the ALJ found that "degenerative disc disease, arthritis of the knees, and carpal tunnel syndrome" were

6

severe impairments.³  Id.  At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1.  (Tr. 22).

Next, the ALJ assessed Plaintiff's RFC and found that Plaintiff had the residual functional capacity to:

> lift and carry 10 pounds frequently and 20 pounds occasionally. She can sit six hours in an eight-hour workday and she can stand and walk six hours in an eight-hour workday. The claimant can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can frequently balance, but only occasionally stoop, kneel, crouch, and crawl.  She can frequently handle and finger bilaterally.  The claimant must avoid concentrated exposure to vibration and hazards, such as machinery and heights.

(Tr. 22-23).  In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p."  (Tr. 23).

At the fourth step, the ALJ held that Plaintiff could perform her past relevant work as a "substance abuse counselor (DOT 045.107-058), which is skilled vocationally and performed at the sedentary exertional level" and as a merchandiser (DOT 298.081-010).  (Tr. 26).  The ALJ noted that Plaintiff testified that she had worked as a substance abuse counselor for more than four years, and that the VE "testified that in addition to the four years of experience, the claimant's four year degree and two specific certifications combine . . . to establish that the work was performed

---

³ The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage.  See Bowen v. Yuckert, 482 U.S. 137 (1987).

On March 24, 2017, Judge Cyrus also found degenerative disc disease and arthritis of the knees to be severe impairments.  (Tr. 227).

7

long enough for the claimant to become competent in the basic required demands." Id. See also (Tr. 250).

The ALJ also made "alternative findings" at the fifth and final step, concluding based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform.[4] (Tr. 27-28). Specifically, the VE testified that according to the factors given by the ALJ, occupations Plaintiff could perform included an office helper, a cashier II, and a mail clerk sorter. (Tr. 27). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, between August 1, 2018, and the date of the decision, April 8, 2020. (Tr. 28).

On appeal to this Court, Plaintiff alleges that the ALJ erred by: (1) improperly discounting the opinion of Plaintiff's treating mental health nurse practitioner; and (2) not fully accounting for Plaintiff's impairments in the RFC finding. (Document No. 17, p. 9). The undersigned will discuss each of these contentions in turn.

### A. Opinion of Nurse Practitioner

In the first assignment of error, Plaintiff argues that the ALJ erred by discounting the opinion of treating mental health nurse practitioner Christi Oates ("Oates") without providing an adequate explanation. (Document No. 17, p. 10). Nurse Oates "found limitations inconsistent with all work based on Lucas's mental impairments." Id. (citing Tr. 1821).

It is not disputed that since Plaintiff's claims were filed before March 27, 2017, opinions like Nurse Oates' are evaluated as an "other source," rather than as an "acceptable medical source."

---

[4] The ALJ observed that on the alleged disability date Plaintiff was "defined as a younger individual age 18-49." (Tr. 27); see also (Document No. 17, p. 5).

8

(Document No. 17, p. 11) and (Document No. 19, pp. 7-8) (citing 82 Fed.Reg. 5844, 2017 WL 168819 (Jan. 28, 2017)).

However, Plaintiff argues that not being "an acceptable medical source" "is an improper basis for discounting the limitations she found." (Document No. 17, p. 12). In addition, Plaintiff alleges that the ALJ "cherrypicked the evidence" to "support a finding of nondisability." Id. Contrary to the ALJ's finding, Plaintiff argues that there is no inconsistency between the evidence and Oates' opinion. (Document No. 17, pp. 13-15). Plaintiff suggests that Oates correctly determined that Plaintiff's anxiety contributed to greater limitations. Id.

Plaintiff goes on to acknowledge that she "cared for her mother with dementia," but asserts that providing this care, along with relocating, caused her great stress. (Document No. 17, p. 16). Plaintiff contends that being a full-time caretaker for her mother "was limited by her mental impairments and not inconsistent with Nurse Oates's findings." Id.

Plaintiff concludes that this matter should be remanded for an "ALJ to reevaluate Nurse Oates's opinion."

In response, Defendant first asserts that

> This argument must be rejected in light of the plain language of the ALJ's decision. (Tr. 21-22.) As the decision makes clear, the ALJ fully explained each of the reasons why Ms. Oates's opinion received little weight. (Tr. 21-22.) First, Ms. Oates was not an acceptable medical source under the regulations in effect for this case. (Tr. 21.) Second, the ALJ properly concluded that Ms. Oates's opinion was inconsistent with the other evidence in the record, including Ms. Oates's own treatment notes. (Tr. 21-22.) Because substantial evidence supports the ALJ's narrative discussion, the ALJ's decision should be affirmed.

(Document No. 19, pp. 6-7).

Defendant further asserts that even if Oates were an acceptable medical source, the ALJ appropriately gave little weight to her opinion because, as explained in his decision, it was

9

inconsistent with other evidence, including Oates' own treatment notes. (Document No. 19, p. 8). Defendant explains that:

> [t]he ALJ discussed Ms. Oates's notes in detail when he discussed the severity of Ms. Lucas's alleged mental impairment. (Tr. 19.) Among other things, he pointed out that Ms. Lucas reported various symptoms and difficulties, but Ms. Oates's initial examination was that Ms. Lucas was cooperative with good eye contact and normal speech." (Tr. 19, 1825.) Ms. Oates went on to say that Ms. Lucas had no problems with comprehension or expression, was alert and oriented, had an intact memory, judgment and insight. (Tr. 19, 1825.) Ms. Oates also noted a number of abnormal findings, among them a sad mood and anxious and tearful affect, but Ms. Lucas's thought processes were intact, logical and organized with unremarkable thought content. (Tr. 19, 1825.) Later notes from Ms. Oates indicated that Ms. Lucas reported feeling "a whole lot better" than her initial presentation. (Tr. 19, 1820.) The ALJ then summarized the rest of Ms. Oates's records as showing a sad mood and anxious affect, but were otherwise normal, with only mild symptoms of depression. (Tr. 19 citing Tr. 1801, 1804, 1809.)

(Document No. 19, pp. 8-9).

Defendant concludes that the ALJ relied on the evidence above as well as additional records to support his finding, and that Plaintiff's claim that the ALJ did not adequately explain the basis for his decision is without merit. (Document No. 19, pp. 9-10) (citing Tr. 22).

Having considered both sides' arguments, including Plaintiff's reply brief, and the ALJ's decision, the undersigned finds Defendant's argument to be compelling. It is clear that the ALJ discussed Oates' opinion, along with other evidence of record, in explaining why he gave little weight to her opinion. See (Tr. 19, 21-22). As such, the undersigned finds that substantial evidence supports the ALJ's decision. Therefore, this Court should respectfully decline to re-weigh the evidence, or to remand it for another ALJ to reevaluate or re-weigh.

### B. Residual Functional Capacity

Next, Plaintiff argues that the ALJ does not adequately account for Plaintiff's mental impairments or foot neuromas in the RFC. (Document No. 17, pp. 29-21). Plaintiff contends that the ALJ still should have included limitations for her mental impairments, even though he found them to be mild. (Document No. 17, pp. 18-19). In the alternative, Plaintiff suggests that the ALJ should have explained why her impairments did not result in limitations in the RFC. (Document No. 17, p. 19).

Similarly, Plaintiff argues that the ALJ should have included limitations for her foot neuromas, or explained why he did not. (Document No. 17, p. 20). Plaintiff notes that she had an on-going issue with pain in her feet. (Document No. 17, pp. 20-23). As such, Plaintiff suggests it was error for the RFC to hold that "[s]he can sit six hours in an eight-hour workday and she can stand and walk six hours in an eight-hour workday." (Document No. 17, p. 23); (Tr. 23).

In response, Defendant argues that Plaintiff's "argument must fail because, as the ALJ explained in his decision, all impairments – including non-severe impairments – were considered in the disability analysis and because there is no evidence of work-related limitations in this area." (Document No. 19, p. 11). Defendant notes that the ALJ stated that he considered "all medically determinable impairments (both severe and non-severe)." Id. (citing Tr. 22).

Defendant also argues that no further discussion was necessary because the evidence does not support more than a minimal degree of limitation. Id. Defendant notes that the ALJ pointed out that Plaintiff "frequently presented with feelings of depression or anxiety or abnormal findings in her mood and affect, but she also presented consistently throughout the period at issue with 'relatively normal mental status examination findings.'" (Document No. 19, pp. 11-12).

> As the ALJ explained, treatment providers frequently noted normal mood and affect (Tr. 19 citing 1798-1826, 1890-1901), Dr. Oates

11

> reported "no problems with comprehension or expression" without referring to issues with impaired memory or concentration (Tr. 19 citing Tr. 1825), and Ms. Lucas herself reported improvement and stabilization with treatment and medication. (Tr. 19-20 citing Tr. 1820, 1891, 1899.) This explanation supports the ALJ's conclusion that, because they were non-severe, Ms. Lucas's mental impairments did not more than minimally affect her ability to work, obviating the need to include further restrictions in the residual functional capacity finding.
>
> The evidence, and the ALJ's discussion of that evidence, makes clear that Ms. Lucas has not met her burden to show that she had a mental impairment that has more than a minimal effect on her ability to perform work.

(Document No. 19, p. 12).

Regarding Plaintiff's foot neuromas, Defendant argues that Plaintiff has failed to show that any additional limitations are required. (Document No. 19, p. 12). Defendant notes that the ALJ discussed this impairment in detail and summarized Plaintiff's testimony. (Document No. 19, pp. 12-13) (citing Tr. 18) (citing Tr. 1639, 1641, 1644, 1647, 1655, 1661, 1665, 1994). Defendant further notes that despite her foot pain, Plaintiff consistently presented with a steady or normal gain and could heel walk and toe walk normally. (Document No. 19, p. 13) (citing Tr. 18) (citing Tr. 1800, 1804, 1899, 1962, 1828, 1831, 1834, 1838, 1841, 1844, 1847, 1850, 1840, 1843, 1846, 1850, 1853, 1856, 1859, 1865, 1880, 1883, 1887). Moreover, the ALJ discussed this evidence in conjunction with the RFC finding. Id. (citing Tr. 25).

The undersigned is not persuaded that the ALJ's RFC finding is deficient. Instead, it appears the ALJ provided adequate explanations for the limitations he included. Defendant makes a compelling argument that the ALJ was not required to do more to explain impairments he found to have a minimal impact on Plaintiff's ability to work.

The undersigned notes that the parties provide little, if any, discussion of the fact that the ultimate finding of the ALJ(s) was that Plaintiff could perform her past relevant work as a

Substance Abuse Counselor. The Dictionary of Occupational Titles ("DOT"), as noted by the ALJ, describes being a Substance Abuse Counselor as "sedentary work." See DICOT 045.107-058, 1991 WL 646633 and (Tr. 26). The DOT describes sedentary work as follows:

> Sedentary work involves **sitting most of the time**, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

Id. (Emphasis added).

Plaintiff describes suffering from pain in both feet and difficulty walking, but declines to explain why she would be unable to do her past relevant work which is performed at the sedentary level. See (Document No. 17, pp. 20-22). It seems that finding Plaintiff could perform her past relevant work logically accounts for any limitations caused by Plaintiff's foot neuroma impairment. The burden of production and proof rests with the claimant during the first four steps, and it does not appear that Plaintiff can persuasively refute the ALJ's step four finding in this case. See Pass, 65 F.3d at 1203.

In short, the undersigned agrees with Defendant that the ALJ decision adequately considered Plaintiff's impairments and symptoms, and that the decision is supported by substantial evidence. The undersigned will decline to recommend remand based on this alleged error.

### C. Constitutional Issue

In her reply brief, Plaintiff briefly suggests for the first time that the ALJ's decision "is constitutionally defective." (Document No. 20, p. 1) (citing Collins v. Yellen, 141 S.Ct. 1761 (2021) and 45 Op. O.L.C. 1 (July 8, 2010)). Plaintiff "asks the Court to stay this case for briefing on the merits of the constitutionality of the Commissioner's decision." Id. However, Plaintiff has not filed a motion to stay or provided any other argument or authority in support of finding the ALJ decision "constitutionally defective."

It appears that the Constitutional argument suggested by Plaintiff has gained little, if any, traction with this Court. For example, the Honorable Kenneth D. Bell recently issued an Order that is instructive here.

> The Court first finds that the Commissioner's final decision was not constitutionally defective. In *Collins v. Yellen*, 141 S.Ct. 1761 (2021), the Supreme Court held that where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction caused her alleged harm. In *Collins*, the Court reasoned that the relevant agency officials were "properly appointed" under a statute that exhibited "no constitutional defect in the ... method of appointment" and that "the unlawfulness of [a] removal provision" does not "strip [an official] of the power to undertake the other responsibilities of his office[.]" The Court continued that "there is no reason to regard any of the actions taken" by the agency during this period "as void." *Id.* at 1787, 1788 n. 23. In this case, Plaintiff, as in *Collins*, grounds his constitutional challenge only on the relevant removal restriction not on the propriety of the Commissioner's appointment. Yet Plaintiff offers no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of his application for disability benefits. Plaintiff simply argues that all actions taken by the Commissioner – and in turn his appointed ALJ's – are void due to the unconstitutional removal provision. However, *Collins* expressly rejects this view. *Id.* Therefore, the final decision of the ALJ is not constitutionally defective.

Chipley v. Kijakazi, 5:21-CV-101-KDB, 2022 WL 2758612, at *3 (W.D.N.C. July 14, 2022).[5] See also Bril v. Kijakazi, 5:22-CV-002-KDB, 2022 WL 3702916, at *3, n. 2 (W.D.N.C. Aug. 26, 2022) ("This Court has rejected this argument many times") (citations omitted); and Sams v. Comm'r of Soc. Sec., 1:20-CV-367-DCK, 2022 WL 3579891, at *6 (W.D.N.C. Aug. 19, 2022) ("Irrespective of who *appointed* the ALJ in this case – that is, an Acting Commissioner or a presidentially-appointed Commissioner, Plaintiff's argument still falls flat because she has not

---

[5] The undersigned observes the plaintiff in Chipley was represented by the same counsel of record as appearing for Plaintiff in this case.

proven any causation between the removal provision and the ALJ's decision in her individual case").

Other judges in this district, as well as the Fourth Circuit Court of Appeals, have reached similar conclusions regarding Plaintiff's suggestion that the ALJ decision might be Constitutionally defective. See Harris v. Kijakazi, 2022 WL 2987928 at *3 (4th Cir. July 28, 2022) ("There are numerous defects in this argument"); Williams v. Kijakazi, 1:21-CV-141-GCM, 2022 WL 2163008, at *2 (W.D.N.C. June 15, 2022) ("Plaintiff herein offers no evidence to demonstrate a nexus between Section 902(a)(3)'s removal restriction and the denial of her benefits claim."); Belanger v. Comm'r of Soc. Sec., 5:21-CV-019-RJC, 2022 WL 3205183, at *2-3 (W.D.N.C. Aug. 8, 2022); Goode v. Comm'r of Soc. Sec., 1:21-CV-103-FDW, 2022 WL 3652665, at *2-3 (W.D.N.C. Aug. 24, 2022); Watkins v. Kijakazi, 1:20-CV-380-MR-WCM, 2022 WL 822166, at *1 (W.D.N.C. Mar. 18, 2022); and Satterthwaite v. Kijakazi, 3:20-CV-724-MOC, 2022 WL 468946, at *3-8 (W.D.N.C. Feb. 15, 2022).

Based on the foregoing, the undersigned cannot recommend that this case be remanded (or stayed) based on Plaintiff's purported Constitutional issue.

## CONCLUSION

The undersigned first notes, as stated above, that two different ALJs have found that Plaintiff was not disabled. See (Tr. 28, 241). Both decisions determined that Plaintiff could perform her past relevant work. (Tr. 26. 241). The latest decision on appeal to this Court is thoughtful and thorough. Moreover, the undersigned finds that it includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971);

15

Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion for Summary Judgment" (Document No. 16) be **DENIED**; "Defendant's Motion For Summary Judgment" (Document No. 18) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 208). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: September 23, 2022

David C. Keesler
United States Magistrate Judge